UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Patricia Brown | CASE NO.: 2:18-cv-08088 |
| v. | JUDGE: Wendy B. Vitter |
| Marlin N. Gusman, Sheriff, et al | MAGISTRATE: Michael North |

---- Consolidated With -----

| | |
|---|---|
| Dennes Edwards, Sr. | CASE NO.: 2:18-cv-13798 |
| v. | JUDGE: Wendy B. Vitter |
| Marlin N. Gusman, Sheriff, et al | MAGISTRATE: Michael North |

**FIRST AMENDED COMPLAINT**
(Concerning case 2:18-cv-13798 only)

The amended complaint of Dennes D. Edwards, Sr. ("Plaintiff") respectfully represents:

## I.  INTRODUCTION

1.      This is a wrongful death and survival action. It seeks compensation for the death of

the plaintiff's son, who died because he was denied medical treatment while held in the

Orleans Parish Prison. He was denied medical treatment even though a nurse at the prison

recognized his need for immediate treatment and that he would likely die if he did not receive

it promptly. She urged the supervisory prison officials to allow the needed care, but they

refused to allow it.  Dennis Edwards, Jr. died in the Orleans Parish Prison because he was denied the medical treatment he needed.

2.     Plaintiff's claims are based  upon the United States Constitution, 42 U.S.C. § 1983 and Louisiana state law. The defendants' failure to provide proper medical treatment deprived Dennis Edwards, Jr. of his clearly established rights guaranteed under the Constitutions and laws of the United States and the State of Louisiana. The defendants violated the rights of Dennis Edwards, Jr. under the Fourth and Fourteenth Amendments of the United States Constitution and the laws of Louisiana when they acted knowingly and with deliberate indifference to his constitutional rights and refused to provide reasonable and required medical treatment for his known and serious medical conditions, thereby causing the death of Dennis Edwards, Jr. as well as extensive physical and emotional pain and suffering prior to his death.  All Defendants acted under color of state law and in causing the deprivation of his federally protected and state law rights.

## II.  JURISDICTION AND VENUE

3.     This is a wrongful death and survival action brought pursuant to 42 U.S.C. § 1983 and pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1988, and Louisiana law.  This action is also based upon violations of the Consent Decree Regarding the New Orleans Sheriff's Office entered between the City of New Orleans and the federal government.  Jurisdiction of this Court is founded on 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this court because the events causing the death of Dennis Edwards, Jr. occurred in this judicial district.

## III.  PARTIES

5.      Plaintiff, Dennes D. Edwards, Sr., is a person of the age of majority and domiciled in Baton Rouge, Louisiana.  He is the father of the decedent, Dennis D. Edwards, Jr., who had no wife or children.  Therefore, Dennes Edwards, Sr. is the only person authorized by Louisiana law to file this wrongful death and survival action.

6.      Defendant Marlin N. Gusman is sued in his individual capacity and in his official capacity as Sheriff of Orleans Parish.  He is a citizen of the State of Louisiana and is domiciled in the Eastern District of Louisiana.  At all times pertinent, he was the Sheriff of Orleans Parish and was responsible for operating the Orleans Parish Prison.  He was also responsible for the hiring, training, supervision, discipline, and control of the staff members under his command, including medical personnel.  He is both directly and vicariously liable for the actions complained of herein.

7.      The previously named defendant, Correct Care Solutions LLC, has now changed its name to Wellpath, LLC, which is named as defendant in place of Correct Care Solutions. It is a limited liability company doing business in the State of Louisiana.  Correct Care Solutions LLC contracted with the Orleans Parish Sheriff's Office to provide medical services to prisoners at the Orleans Parish Prison and was liable for its actions and inactions and for those of its employees.  Wellpath, LLC is therefore liable for the damages caused by Correct Care and claimed herein.

8.     The Correct Care charge nurse on duty at the time of the death, John P. Polete is liable for his actions and inactions that caused and contributed to the death of Dennis Edwards, Jr.

9.     Defendants John Doe 1, John Doe 2, and Jane Doe 1 are employees of the Orleans Parish Sheriff who had supervisory or direct responsibility for the care of Dennis Edwards, Jr or for ensuring adequate staffing, training, and procedures. **Their true identities are not yet known.** The Doe defendants are personally and individually liable for their actions and omissions and are also liable in their official capacities. They will be joined when their identities are revealed by the named defendants.

### IV.  FACTUAL BASIS OF THE CLAIMS

10.     Dennis D. Edwards, Jr., was an inmate at Orleans Parish Prison at the time of his death. He had been arrested for alleged misdemeanors and was awaiting release on bail. He had not been convicted of the alleged misdemeanors that resulted in his incarceration.

11.     On or about December 15, 2017, Dennis Edwards, Jr. began showing ill effects of an unknown medication and/or medical condition and was taken to the prison medical center. He was examined by Natalie Henderson, a Licensed Practical Nurse employed by the defendants.  Nurse Henderson took the decedent's vital signs and determined that he was in extreme distress and in need of immediate hospitalization in a facility able to provide adequate medical treatment.  Nurse Henderson informed the charge nurse on duty of the need for immediate treatment.  The Correct Care Charge Nurse, John P. Polite, RN refused to

allow the transfer of  Dennis Edwards, Jr. to a hospital and refused to allow the staff a request for EMS personnel. He neglected to provide medical care for Dennis Edwards everbn though he was told that the patient was in severe distress and even though he personally observed that distress.  Between forty-five minutes to an hour later, Dennis Edwards, Jr. stopped breathing.

12.    Despite CPR attempts, Dennis Edwards, Jr. died at the Orleans Parish Prison. His death was the result of the defendants' failure to provide adequate medical treatment.

13.    The failure to take appropriate steps to treat Dennis Edwards, Jr., in spite of knowledge of his extreme distress and symptoms that called for medical treatment, was a result of the defendants' deliberate indifference to his constitutional rights, their reckless disregard for his well being, and their gross negligence.

14.    By contract with Sheriff Gusman, Correct Care Solutions assumed the duty of providing Constitutionally required medical care to people held in the Orleans Parish Prison, including Dennis Edwards, Jr. Its assumption of these governmental and constitutionally required services made Correct Care Solutions a state actor for purposes of its liability pursuant 42 U.S.C. § 1983. At all times relevant, Correct Care Solutions was responsible for providing the constitutionally required medical care and monitoring for Dennis Edwards, Jr. All the actions and omissions of Correct Care Solutions, John P. Polete, and its other employees, as alleged herein, were performed under color of state law.

15.    During all times relevant herein, the Orleans Parish Prison suffered from a lack of

supervision and inadequate staffing that created unconstitutional risks to inmate safety. There is a longstanding well-documented pattern and practice of inadequately staffing the Orleans Parish Prison. Sheriff Gusman, Correct Care Solutions, LLC, and the Doe defendants (hereinafter, sometimes collectively referred to as "Defendants") were aware of the inadequate staffing, inadequate training, and inadequate supervision of medical and correctional staff. Nevertheless, the Defendants failed to take the actions needed to address these deficiencies.

16.     Numerous reports from the United States Department of Justice placed the Defendants on notice of the unconstitutional risks to inmate safety created by inadequate staffing and supervision at Orleans Parish Prison. On September 11, 2009, following an extensive investigation, the United States Department of Justice  formally notified Defendant Sheriff Gusman of its finding that many conditions and practices at the Orleans Parish Prison violated the constitutional rights of inmates.  Specifically, the Department of Justice found that "[s]taffing levels at OPP are inadequate to protect inmates from harm."

17.     The Defendants were all aware of the inadequate staffing and inadequate training and supervision of medical and correctional staff. Nevertheless, the Defendants failed to take the actions needed to address these deficiencies.

18.     The Department of Justice declared that Orleans Parish Prison "must protect inmates from harm by providing adequate staff supervision."  The September 11, 2009, letter from the United States Department of Justice also notified Sheriff Gusman of the measures

necessary to remedy the unconstitutional conditions at Orleans Parish Prison, including those alleged in this Complaint. Sheriff Gusman declined to correct the identified unconstitutional conditions.

19.     Approximately three years later, on April 23, 2012, the Department of Justice issued an updated finding letter to Sheriff Gusman based upon an ongoing three-year investigation of Orleans Parish Prison.  In the updated letter, the Department of Justice concluded that "[s]taffing levels at Orleans Parish Prison continue to be inadequate to protect prisoners from harm."  The Department of Justice further found that "Orleans Parish Prison continues to operate without a staffing plan."

20.     The aforementioned findings document the continuing practices of unconstitutionally inadequate staffing and supervision at Orleans Parish Prison and the corresponding risks to inmate safety, the fact that they are not isolated events, and the fact that Sheriff Gusman was aware of these failures.  The unconstitutional risks to inmate safety resulting from inadequate staffing and supervision at Orleans Parish Prison were a direct and proximate cause of the death of Dennis Edwards, Jr.

21.     Through the consent judgment and additional directives of the Court, the Orleans Parish Prison was required to monitor and document the condition of each prisoner subject to the opiate withdraw protocols every eight hours. Due to under staffing and in violation of that order, the employees of the Sheriff and Correct Care Solutions failed to monitor the Condition of Dennis Edwards, Jr every eight hours as required.

22.     At all relevant times, the Defendants failed to provide constitutionally adequate and

timely medical care to inmates housed at Orleans Parish Prison, including Dennis Edwards, Jr.[1]  The substantial risk of harm to inmates resulting from the lack of timely and adequate medical care is a longstanding, pervasive practice at the Orleans Parish Prison that has been well-documented since at least 2009.  The official recognitions of the deficiencies have been specifically directed to Defendant Sheriff Gusman.

23.     In the letter of findings issued by the Department of Justice on September 11, 2009, the Department of Justice found that inmates did not receive adequate medical health care and that the physical jail caused harm and posed an unreasonable risk of serious harm to inmates' health.

24.     The updated findings letter issued by the Department of Justice on April 23, 2012, detailed ongoing deficiencies at Orleans Parish Prison necessitating emergency action, including, specifically, the inadequate access medical care. The Department of Justice concluded that "Orleans Parish Prison is deliberately indifferent to prisoners with serious medical and mental health needs" and that "[p]risoners with physical illness, either emergent or chronic, experience unreasonable barriers in accessing care."  The Department of Justice emphasized that "[t]he conditions in Orleans Parish Prison fail to meet the most basic obligation of prison official to provide humane conditions of confinement" and that Orleans Parish Prison "has long known of [such] conditions...and has disregarded the harm and risk of harm the conditions create."  The updated letter of findings established that constitutional violations at Orleans Parish Prison regarding the medical care and conditions of confinement

---

[1]*See, e.g.,* ***Easter v. Powell****,* 467 F.3d 459, 463 (5th Cir. 2006)

of inmates were not simply isolated occurrences. In spite of this prior notice of the problems and the steps necessary to remedy the problems, the Defendants had not resolved any of the Department of Justice's findings.

25.     Sheriff Gusman was again placed on notice of the unconstitutional medical care at Orleans Parish Prison when a Complaint in Intervention was filed by the United States on September 24, 2012, in the matter *Jones, et al. v. Gusman, et al.*  In that Complaint, the United States specifically alleged that Sheriff Gusman "has exhibited deliberate indifference to Orleans Parish Prison prisoners' serious medical needs."  In a minute entry filed in the same matter over five years later on January 29, 2018, Judge Africk raised serious concerns relating to the continuous lack of improvement of pervasive problems facing Orleans Parish Prison in the years preceding the death of Dennis Edwards, Jr.  Judge Africk specifically found that the lack of timely and meaningful healthcare continued to be "unacceptable."

26.     In spite of their awareness of the longstanding constitutional violations inherent in the prison's failure to address the medical needs of its inmates, the Defendants, including Sheriff Gusman and Correct Care Solutions,  refused to enact adequate policies and procedures and failed to take the remedial measures required to ensure that the inmates receive appropriate medical attention and protection from harm. The same ongoing constitutional violations regarding the lack of timely and adequate medical care noted by the Department of Justice existed at the time of the death of Dennis Edwards, Jr. and were a direct and proximate cause of his death.

27.     During all times relevant, the Defendants were subject to a Consent Judgment filed

on December 11, 2012, which required that they implement systematic and durable reforms to address pervasive and longstanding problems at Orleans Parish Prison.  The purpose of the Consent Judgment was "to ensure that the conditions in Orleans Parish Prison protect the constitutional rights of prisoners confined there."[2]  The Consent Judgment was approved by the Court on June 6, 2013.  Even though more than five years have now passed since the Court entered an order approving the Consent Judgment, the Defendants have failed to take steps necessary to satisfy the mandates of the Consent Judgment. The Defendants have not complied with the mandates relating to the lack of timely and meaningful healthcare, the lack of accessible healthcare, and or the mandates requiring written policies regarding healthcare. In the Court's Order Approving the Consent Judgment, the Court noted that the evidence presented in a fairness hearing "exposed stark, sometimes shocking, deficiencies in Orleans Parish Prison's medical and mental health care system."[3]  The Court also acknowledged that "Orleans Parish Prison's deficiencies with respect to medical and mental health care are widespread," and that "[t]he evidence presented shows that a lack of treatment altogether, rather than inadequate treatment, contributes to severe deficiencies in medical and mental health care at Orleans Parish Prison."[4]

28.     The Consent Judgment and the order approving the Consent Judgment prove that

---

[2]See Consent Judgment, filed December 11, 2012, at p. 1.

[3]Order Approving Consent Judgment and Certifying Settlement Class, filed June 6, 2013, at p. 46.

[4]*Id.* at 64.

Defendants, individually and collectively, were well aware of the pervasive constitutional violations concerning the health and safety of inmates.  Despite their notice of these violations, the Defendants had yet to makethe required improvements as of the date of the death of Dennis Edwards, Jr., as evidenced by Judge Africk's January 2018 order, issued a month after the death at issue, in which he noted that the lack of timely and meaningful healthcare remained "unacceptable."

29.     The Defendants, all acting under the "color of law," persistently and habitually failed to provide for the basic medical needs of inmates housed at Orleans Parish Prison and acted with deliberate indifference to those needs and to the federal court orders that required they correct those problems.  As a result, inmates with medical needs are not afforded timely or adequate medical care, even in life-threatening situations. In the case of Dennis Edwards. Jr., these defendants displayed their deliberate indifference to his suffering and medical needs even though they were expressly informed of his condition.  The Defendants each had actual knowledge of the danger posed by the inadequate medical support and treatment at Orleans Parish Prison.  The Defendants nevertheless, with deliberate indifference to their obligations and with reckless disregard for the rights of Dennis Edwards, Jr, failed to act to protect him from the danger of being denied his most basic medical needs.  As a result, Dennis Edwards, Jr. was denied the medical treatment he required, and was left to suffer and die.  For these reasons, the defendants are liable in their individual capacities.

## COUNT V:

## Liability of Sheriff Gusman, Correct Care Solutions, and the "Doe" defendants in their official capacities pursuant to 42 U.S.C. § 1983

30.     The death of Dennis Edwards, Jr. was a result of the actions and omissions of Sheriff Gusman, Correct Care Solutions, and the "Doe" defendants as set forth above. Those acts and omissions were made in conformance with established policies, procedures and practices that directly and proximately caused the deprivation of the constitutional rights of Dennis Edwards, Jr. and caused his death. The Defendants' deliberate indifference and disregard for the rights and medical needs of inmates in their custody and control are reflected by the policies, procedures, customs and practices in place at Orleans Parish Prison in violation of 42 U.S.C. § 1983. The Defendants individually and collectively, knew that, as a result of the policies, procedures, customs, and practices in place, inmates housed at Orleans Parish Prison face a substantial risk of serious harm.  These defendants, individually and collectively, failed to take reasonable measures to minimize that risk, and those failures were the proximate cause and cause-in-fact of the untimely death of Dennis Edwards, Jr.

31.     Sheriff Gusman, Correct Care Solutions, and the Doe defendants employed by them are also liable for their failure to properly train, hire, discipline, and supervise their staff, employees and agents, whose acts caused the death of the Dennis Edwards, Jr. These defendants have a longstanding pattern and practice of failing to appropriately train, hire, discipline, and supervise Orleans Parish Prison staff, employees and agents and, as a result,

the people incarcerated at the prison are subject to a substantial risk of harm when in need of emergency medical attention.  These failures are pervasive and the resulting substantial risk of harm to people incarcerated at Orleans Parish Prison is common knowledge. Because of that lack of adequate medical care and the defendants deliberate indifference to the problem, Dennis Edwards, Jr. was incarcerated under those dangerous conditions that ultimately resulted in his death.

32.    Sheriff Gusman, Correct Care Solutions, and their supervisory employees had knowledge of the history of inadequate medical care at Orleans Parish Prison, which was known by them personalty and reminded to them by multiple orders from this Court. Nevertheless, they failed to act to protect the Dennis Edwards, Jr. from that danger.  As a result of these practices, and because of the defendants' deliberate indifference to the effects their practices had upon the prisoners under their care, Dennis Edwards, Jr. was denied the medical attention he needed to survive and was left to suffer and die in the Orleans Parish Prison.

33.    Correct Care Solutions and its employees were directly responsible for the monitoring, supervision and evaluation of the medical needs of Dennis Edwards, Jr., the delivery of care for him, and the decisions as to the treatment provided to to him. Correct Care Solutions violated his constitutional rights by failing to adequately monitor Dennis Edwards, Jr.'s condition while undergoing a medical withdrawal protocol under the auspices of Correct Care Solutions, and by ignoring his serious medical needs that became apparent as a result of that protocol.  The Defendant's deliberate indifference to his rights and their callous

disregard for his suffering and life are established by the fact that they instituted the protocols that led to his emergency medical condition and then they refused to allow anyone to seek or provide the medical treatment he so desperately and obviously needed.

34.     Correct Care Solutions, a for profit corporation, was and is responsible for hiring, training, supervising, disciplining, and managing the medical personnel at the Orleans Parish Prison. Further, it and its employees are responsible for implementing and enforcing all policies and procedures for the medical personnel at the Orleans Parish Prison.

35.     In connection with all actions alleged herein, Correct Care Solutions and its employees were state actors by virtue of the fact that Correct Care Solutions, by contract, assumed the governmental function of providing medical care to the prisoners held in the Orleans Parish Prison.  As a result, Correct Care Solutions and its employees were state actors with regard to the actions and inactions alleged herein, and assumed responsibility for ensuring that their activities complied with the demands of the US Constitution.

36.     Defendant Gusman was aware of continuous violations of OPSO policy by Defendant Gusman's deputies, including severe under staffing, failure to train and  supervise deputies, and that this failure to remedy the continuous violations amounted to gross negligence and deliberate indifference.

37.     The DOJ letter, as well as language in the Consent Judgment issued in the Jones case amount to notice of the same type of constitutional violations alleged herein. Specifically, Defendant Gusman has been made aware on multiple occasion of the egregious constitutional

violations occurring at OJC.

34.     The actions and failures to act by Correct Care Solutions and the Doe defendants, as set forth above, all resulted from their longstanding policies and practices that included a lack of adequate training and a systemic failure to provide the medical care required by the United States Constitution and the orders of this Court.

**Count VI:**

**Liability of Sheriff Gusman, John P. Polete, and  the "Doe" defendants**

**in their individual capacities pursuant to 42 U.S.C. § 1983**

35.      Plaintiff incorporates by reference all above and  below allegations of fact.

36.    Plaintiff shows that the actions and omissions by Sheriff Gusman, John P. Polete, and the Doe defendants stated herein constituted at violations of the clearly defined constitutional rights of Dennis Edwards, Jr. and that these violations were a result of his deliberate indifference to those rights.

37.      Plaintiff shows that the constitutional rights that were clearly violated include those identified above and recognized in the consent order and other mandates issued to Sheriff Gusman and the Orleans Parish Prison. This includes his failure to ensure that the prison was adequately staffed with employees adequately trained to provide the constitutionally required medical care for persons detailed there and that he failed to correct and act upon repeated constitutional violations of those requirements that were pointed out to him, and that those violations led to the suffering and death of Dennis Edwards, Jr. for Dennis Edwards, Jr.

38.     Sheriff Gusman is bound individually and in his official capacity to obey and carry out the orders of this Federal Court including those the Consent Order. Plaintiff contends that the consent order specifics the conduct required of the Sheriff to comply with the statutory and constitutional rights of the people he incarcerates.  As a matter of law, these orders impose a duty upon him. In other employment, a supervisor might absolve himself of personal duty by delegating the duty to a responsible subordinate. In this case, plaintiff contends the sheriff cannot escape the duty by delegating it to any individual or to a third party. We contend that the buck stops with him such that he is individually responsible and liable for his failure to perform the duties specified in the order. The fact that he may be held in contempt of the consent order makes it clear that the duties imposed by that order  remain with him. Plaintiff shows that his failures to comply were a result of deliberate indifference to the Constitutional rights of Dennis Edwards, Jr.

39.     John P. Polite, the charge nurse was responsible for medial care ofg Dennis Edwards Jr at the time of his death. Nurse Polete was aware of the fact that Dennis Edwards, Jr was in need of immediate medical care, Nevertheless, Nurse Polite refused to provide care and refused to allow his staff to send Mr. Edwards to the hospital or call for EMS assistance. His acts and omissions were a violation of Mr. Edwards clearly defined constitutional right to medical care. In his refusal to provide or allow that care, Nurse Polete acted with deliberate indifference to those constitutional rights and allowed Mr. Edwards to suffer and die in his presence without providing the needed medical treatment.

40.     The individual employees of the Orleans Parish Sheriff's office who are Doe defendants are liable in their individual capacities because they violated clearly defined constitutional rights of Mr. Edwards while acting in deliberate indifference to those constitutional rights.

## COUNT VII

### Liability of Sheriff Gusman, John P. Polete, and Wellpath under state law

41.     At all material times herein, the staff, the employees and agents of defendants were acting within the course and scope of their employment, so that the defendants are vicariously liable pursuant to state law for the injuries and damages that occurred as a result of their employees' fault.  The vicarious liability of Sheriff Gusman and Correct Care Solutions, and the liability of all defendants under La. C. C. Art. 2315 arises from the errors, omissions, and breach of duties owed under state law and is based upon the facts pleaded in the foregoing paragraphs, which are incorporated by reference.

## COUNT VII:

### Liability of Sheriff Gusman, Correct Care Solutions, Wellpath, and their supervisory employees for their own negligence and breach of duties owed under state law

42.     Sheriff Gusman, John P. Polete Correct Care Solutions, Wellpath, and their supervisory employees were each delegated with duties that required they ensure that Dennis Edwards, Jr. receive required medical treatment and monitoring while in their care. The facts pleaded above show that these defendants negligently failed to provide the required

monitoring and treatment, and that they are liable under Louisiana state law for their negligence.

## COUNT VIII:

**Punitive Damages Owed Pursuant to 42 U.S.C. § 1983**

43.    The actions and omissions of the defendants and their employees, agents and contractors complained of herein, were unlawful, shocking to the conscience and unconstitutional, and were performed intentionally, willfully, wantonly and with reckless disregard for the constitutional rights of Dennis Edwards, Jr. Therefore, his father, Dennes Edwards, Sr. is entitled to an award of punitive damages pursuant to 42 U.S.C. § 1983.

## COUNT IX:

**Damages to be awarded**

44.    Dennes Edwards, Sr., as the father of the deceased Dennis Edwards, Jr., is entitled to recover survival damages, wrongful death damages, punitive damages, sanctions for violations of the orders specified above, attorney's fees, costs, and judicial interest. Dennis Edwards, Sr. seeks the award of damages in the amounts to be awarded in the sound discretion of the jury. He objects to requesting a specific dollar amount in this Complaint. However, to the extent a specific dollar amount is required by law to be set forth in this Complaint, he asserts that the amount of compensatory damages should not exceed Twenty-Five Million Dollars and the punitive damages to be awarded should not exceed Fifty Million Dollars.  The awards should  compensate for the losses identified below:

**Survival Damages**:

    a.    compensation for the conscious and severe physical pain and suffering endured by Dennis Edwards, Jr. prior to his death; and,

    b.    compensation for the fear, fright, anxiety, humiliation and other emotional pain and suffering endured by Dennis Edwards, Jr. prior to his death.

**Wrongful Death Damages:**

    c.    compensation for the emotional pain and suffering and the loss of love, affection, and companionship suffered by Dennes Edwards, Sr. as the result of the death of his son, Dennis D. Edwards, Jr., and,

    d.    the expenses of the funeral and burial of his son, in the amount of $7,375.

**Punitive damages**

    e.    Mr. Edwards seeks an award of punitive damages adequate to punish the defendants for their continuing failure and refusal to provide the Constitutionally required medical care for the people they imprison, arrest, and hold without a conviction; for their arrogant refusal to comply with the orders of this United States District Court; for their failure to remedy the deficiencies in their practices as cited by the Department of Justice; and for their callous disregard for the sanctity

of human life as evidenced by their refusing to allow needed medical

care for Dennis Edwards, Jr. while he suffered and died. The damages

awarded should be adequate to discourage the defendants' unlawful

practices that caused the death of Dennis Edwards, Jr. and which have

caused the suffering and death of many other people in the Orleans

Parish Prison, all because of the same policies that caused the death of

Dennis Edwards, Jr. on December 15, 2017.

## COUNT X:

**Attorney Fees Owed Pursuant to 42 U.S.C. § 1988**

46.    Plaintiff shows he is entitled to an award of attorney fees and costs pursuant to 42

U.S.C. § 1988.

47.     Plaintiff requests a jury trial.

**Wherefore,** Dennes D. Edwards, Sr. prays that, after due proceedings, judgment be

granted in his favor and against all defendants, jointly, severally and in solido, in such

amounts as are reasonable in the premises, together with punitive damages, civil penalties,

attorney's fees, all costs and expenses incurred, interest from the date of judicial demand, and

all available general and equitable relief.  Plaintiff further requests a jury trial.

Respectfully submitted,

//s// Neil D. Sweeney
Louisiana State Bar No. 2136
SWEENEY LAW FIRM, LLC
7921 Picardy Avenue
Baton Rouge, LA 70809
Telephone: (225) 768-7300
Fax: (225) 768-9775
Email: nds@sweeneylawfirmllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2019, a copy of the foregoing First

Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system.

Notice of this filing will be sent to all counsel of record by operation of the court's electronic

filing system.

*/s/ Neil D. Sweeney*